IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARLA JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-03-1374 |
| | § | |
| STERLING BANCSHARES, INC., | § | |
| AD&D, AND DISABILITY PLAN, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending are Defendant Sterling Bancshares, Inc., AD&D, and Disability Plan's Motion for Summary Judgment (Document No. 11) and Plaintiff Marla Jackson's [Cross] Motion for Summary Judgment (Document No. 14). After having carefully reviewed the motions, responses, replies, and applicable law, the Court concludes as follows:

I. Background

Plaintiff Marla Jackson ("Jackson") alleges that Defendant Sterling Bancshares, Inc., AD&D and Disability Plan ("the Plan") unlawfully denied disability payments to which she is entitled under her employer's long-term disability plan. Jackson began working as a Loan Review Processor for Sterling Bancshares, Inc. ("Sterling") on February 25, 2002. As a full-time salaried employee, Jackson was a participant in the Plan, which is insured and administered by Prudential Insurance Company of America

("Prudential") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Jackson alleges, and it appears uncontroverted, that she was provided the "Enrollment Form/Change Form," which she signed, and a document entitled "Sterling Bank Your Benefit Plans." These documents described the Long-Term Disability benefit of the Plan in slightly varying substances as follows:

| "Enrollment Form/Change Form" | "Sterling Bank Your Benefit Plans" |
|---|---|
| **Long-Term Disability: UNUM**<br>For full-time employees only.<br><br>■ Sterling Bank provides a LTD benefit in the amount of 60% of your monthly earnings to a maximum benefit of $10,000. You are eligible for benefits on the 60th day following injury or illness. | **Long-Term Disability**<br><br>■ Coverage begins on the 31st day of employment for full-time employees<br><br>■ Benefits are paid beginning on the 61st day of disability and ending when you return to work<br><br>■ Benefits equal 60% of your W-2 earnings up to a maximum of $16,500<br><br>■ Premiums are paid by the Bank |

Neither of the documents sets out any circumstances under which one would lose or be denied those benefits, such as for a pre-existing condition.

In June, 2002, Jackson took a leave of absence from Sterling, and, in August of that year, she submitted her long-term disability (LTD) claim application to Prudential for processing. The Medical

2

Information section of the claim application, completed by Jackson, stated that the medical condition preventing her from working was "Restless leg syndrome and difficulty falling to sleep and staying asleep and when waking up difficulty go [sic] back to sleep." Document No. 12 ex. H, at 194. The Attending Physician's Statement contained in the claim application, completed by Dr. Heather Linn ("Dr. Linn"), stated that Jackson's "primary clinical diagnosis" was Restless Leg Syndrome (RLS) and that the "nature of her medical impairment/limitation" was "cognitive dysfunction due to lack of sleep from RLS." Id. at 195-96. During the processing of Jackson's LTD claim, Jackson reported to Prudential, in phone calls, that she was "previously treated by Dr. Haddock, primary care physician, for restless leg syndrome by taking Klonopin, for which Clonazapam is the generic drug," and that she had "ended treatment with Dr. Haddock in March 2001, and that Dr. Wilkerson had taken over as [her] primary care physician." Id. ex. J, at 209. Jackson also notified Prudential, by letter dated September 27, 2002, that she had been diagnosed with hypothyroidism and hypoglycemia.[1] Id. ex. I. Prudential received medical records from Dr. Wilkerson and pharmacy records from Eckerd Drugs that

---

[1] Although Jackson advised Prudential that she suffered from hypoglycemia, she testified in her deposition that she was simply tested for hypoglycemia, had not been prescribed medication to treat hypoglycemia, and did not submit any documents to Prudential regarding hypoglycemia. See Document No. 12 ex. C, at 53:9-54:17; 114:17-22. Jackson's alleged hypoglycemia is therefore not an issue in this case.

3

showed that prescriptions for Clonazapam for Jackson were filled on December 28, 2001, January 31, 2002, and March 4, 2002, and that Jackson's hypothyroidism was treated with Levoxyl, the prescription for which was filled on March 21, 2002. Id. ex. J, at 122-23; ex. K.

Under the terms of the Plan, an employee's disability is expressly excluded from coverage if it is "caused by, contributed to by, or resulting from" the employee's "pre-existing condition." Id. ex. A, at 21. An employee is deemed to have a pre-existing condition under the Plan if (1) he/she "received medical treatment, consultation, care or services including diagnostic measures, took prescribed drugs or medicines, or followed treatment recommendation in the 3 months just prior to your effective date of coverage;" and (2) his/her "disability begins in the first 12 months after [his/her] effective date of coverage." Id. By letter dated October 18, 2002, Prudential denied Jackson's claim for LTD benefits on grounds that the Plan's pre-existing condition exclusion applied to her claim for benefits. In its letter, Prudential informed Jackson that "[s]ince you took prescribed drugs or medications for treatment of your conditions of RLS and hypothyroidism during the three month period preceding your date of coverage [March 26, 2002], and you went out of work within the first year of being covered for LTD benefits, the pre-existing

4

condition exclusion applies to your claim of LTD benefits, and we are denying your claim for LTD benefits." Id. ex. J, at 123.

By letter dated October 7, 2001, Jackson requested that Sterling send her "a copy of the policies on Short and Long Term disabilities, and a current employee handbook." Id. ex. Q, at 141. Four days later Wanda S. Dalton ("Ms. Dalton"), Senior Vice President and Director of Human Resources of Sterling, responded to Jackson's request. At that time, Sterling's employee handbook was being revised, so Ms. Dalton instead enclosed excerpts from Sterling's Manager's Guide pertaining to short-term and long-term disability. Id. ex. R, at 142. On October 24, 2002, Jackson sent another letter to Sterling, this time requesting the "Long-Term Disability Plan." Id. ex. S, at 150. Within six days, on October 30, 2002, Ms. Dalton sent to Jackson a copy of the LTD Plan and its corresponding Summary Plan Description. Id. ex. T, at 151. Jackson received the LTD Plan and the Summary Plan Description by November 5, 2002, less than two weeks after her request. Id. ex. C, at 139:1-3.

On November 15, 2002, Jackson appealed the denial of her LTD benefits. As the basis for her appeal, Jackson claimed that she was disputing the denial of benefits because she had "never received, nor read a copy of the benefits plan for LTD prior to November 5, 2002." Id. ex. L, at 128. By letter dated December 12, 2002, Prudential upheld its decision to disallow Jackson's

claim. The letter again set forth the definition of pre-existing condition contained in the Plan and explained that Jackson's claim was barred by the pre-existing condition exclusion. <u>Id.</u> ex. M, at 129-30. The letter went on to state:

> While you may not have received a copy of the Group Policy and Summary Plan Description at the time you began your employment, the Group Policy you are covered under includes pre-existing policy exclusion as described above. Since information in your file indicates that you were prescribed medications during the pre-existing period, we are not able to pay benefits under the terms of the Group Policy. Therefore, we have upheld our decision to disallow your claim.

<u>Id.</u> at 130. The letter then advised Jackson of her appeal rights and the procedure to appeal Prudential's determination. <u>Id.</u>

On January 13, 2003, Jackson sent a second request for reconsideration to Prudential, which was an appeal of the denial of her claim again, asserting "With the information and documents provided to me, I understood that I was covered with Short and Long Term Disability." <u>Id.</u> ex. N, at 132. Prudential, by letter dated February 26, 2003, again explained the pre-existing condition exclusion and upheld the denial of her claim on that basis. The letter explained, "While you indicate that you were not given a copy of the plan booklet or Summary Plan Description (SPD), all of the provisions contained therein apply and must be satisfied in order to receive benefits under Group Policy #41165. Plan administration and claim determinations are made by Prudential and

6

not Group Policy holders or their employees." Id. ex. O, at 134. Prudential further advised Jackson that she could either appeal or file a lawsuit. Id.

On April 25, 2003, Jackson filed this lawsuit against the Plan seeking LTD benefits from August 2002 to "until such time as she is no longer eligible for benefits under the Plan," Document No. 14, at 11, and attorney's fees and costs of "at least 100% of the benefits due." Document No. 1, at ¶¶ 15-19. Jackson claims the Plan, by and though Prudential, violated ERISA, 29 U.S.C. § 1132(1)(B), by unlawfully denying her LTD benefits without providing notice of limitations on the benefits under the Plan. The Plan moves for summary judgment on Jackson's claims on grounds that as a matter of law Prudential did not abuse its discretion in denying Jackson's LTD benefits. In response, Jackson moves for cross summary judgment that Prudential abused its discretion by denying her benefits.

II. Standard of Review: Fed. R. Civ. P. 56(c)

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate

the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. See id. at 2553-54. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. See Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2514-15 (1986)). "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. See Anderson, 106 S. Ct. at 2513-14. All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id.

8

(citing Anderson, 106 S. Ct. at 2511). Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

III. Discussion

A. ERISA Standard of Review

The proper standard for district court review of a plan administrator's benefit determination is governed by the Supreme Court's decision in Firestone Tire and Rubber Co. v. Bruch, 109 S. Ct. 948 (1989). In Bruch, the Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 109 S. Ct. at 956-57. The Plan in this case provides that:

> This Group Contract underwritten by The Prudential Insurance Company of America provides insured benefits under your Employer's ERISA plan(s). The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

Document No. 12 ex. A, at 39. Under Bruch, when an administrator has discretionary authority with respect to the decision at issue,

9

like Prudential, the standard of review should be one of abuse of discretion. 109 S. Ct. at 957.

Where, as here, an employer contracts with a third party that both insures and administers the plan, however, the administrator of the plan is self-interested, i.e., the administrator potentially benefits from every denied claim. In such a case, the focus is on "whether the record adequately supports the administrator's decision." Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 298 (5th Cir. 1999) (en banc). As the Fifth Circuit held in Vega:

> [W]hen confronted with a denial of benefits by a conflicted administrator, the district court may not impose a duty to reasonably investigate on the administrator. Under our own precedent and the Supreme Court's ruling in Bruch, we must give deference to the administrator's decision. That the administrator decides a claim when conflicted, however, is a relevant factor. In a situation where the administrator is conflicted, we will give less deference to the administrator's decision. In such cases, we are less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision. Although the administrator has no duty to contemplate arguments that could be made by the claimant, we do expect the administrator's decision to be based on evidence, even if disputable, that clearly supports the basis for its denial.

Id. at 299; see also Lain v. UNUM Life Ins. Co. of America, 279 F.3d 337, 342-43 (5th Cir. 2002).

A two-step analysis is ordinarily employed for determining whether a plan abused its discretion in denying a participant plan benefits. Rhorer v. Raytheon Engineers & Constructors, Inc., 181

F.3d 634, 639 (5th Cir. 1999) (citing <u>Spacek v. Maritime Ass'n, I L A Pension Plan</u>, 134 F.3d 283, 292-93 (5th Cir. 1998)). *See also* <u>Wildbur v. ARCO Chem. Co.</u>, 974 F.2d 631, 637 (5th Cir. 1992). A court first determines the legally correct interpretation of the plan, and whether the administrator's interpretation accords with the proper legal interpretation. <u>Rhorer</u>, 181 F.3d at 639 (citing <u>Spacek</u>, 134 F.3d at 292). If the administrator's construction is legally sound, then no abuse of discretion occurred and the inquiry ends. <u>Id.</u> at 640. But if the court concludes that the administrator has not given the plan the legally correct interpretation, the court must then determine whether the administrator's interpretation constitutes an abuse of discretion. <u>Id.</u>

B. <u>Prudential's Denial of LTD Benefits to Jackson</u>

It is undisputed that Jackson's disability resulted from a pre-existing condition, as that term is defined in the Plan. *See* Document No. 12 ex. C, at 118:1-6, 13-19. It is also undisputed that Jackson's medical and pharmacy records, upon which Prudential based its finding of pre-existing condition, were correct and accurately demonstrated that Jackson had been treated for restless leg syndrome and hypothyroidism during the pre-existing period. *See* <u>id.</u> at 113:1-114:13; 155:23-156:4. It is also undisputed that the Plan expressly excludes from coverage "any disabilities caused

by, contributed to by, or resulting from your . . . pre-existing condition." Despite all of the foregoing, Jackson claims that she is entitled to LTD benefits because the Summary Plan Description failed to include pre-existing conditions as one of the exclusions from LTD coverage. Jackson points out that the Summary Plan Description under Fifth Circuit authority in essence is a more important document than the Plan itself. For example, if the Summary Plan Description is in conflict with the terms of the policy, the plan participant may rely upon the Summary Plan Description to obtain more favorable benefits described in the Summary. *See* Hansen v. Continental Ins. Co., 940 F.2d 971 (5th Cir. 1991). Moreover, if there is an ambiguity in the Summary Plan Description that under one interpretation may conflict with the terms of the policy, "the ambiguity in the Summary Plan Description must be resolved in favor of the employee and made binding against the drafter." Id. at 982. The court wrote:

> Any burden of uncertainty created by careless or inaccurate drafting of the summary must be placed on those who do the drafting, and who are most able to bear that burden, and not on the individual employee, who is powerless to affect the drafting of the summary or the policy and ill equipped to bear the financial hardship that might result from a misleading or confusing document.

Id. *See also* Rhorer v. Raytheon Eng'rs & Constructors, 181 F.3d 634, 641 (5th Cir. 1999) ("[A]mbiguous terms in summary plan description are resolved in the employee's favor.")

12

With this legal framework, Jackson contends that the Summary Plan Description furnished by Prudential created at least an ambiguity if not a direct conflict in the section entitled, "Loss of Benefits." This section from the Summary Plan Description reads as follows:

**Loss of Benefits**

> You must continue to be a member of the class to which this plan pertains and continue to make any of the contributions agreed to when you enroll. Failure to do so may result in partial or total loss of your benefits. It is intended that this plan will be continued for an indefinite period of time. But, the employer reserves the right to change or terminate the plan. This booklet describes your rights upon termination of the plan.

Given the fact that Prudential included in the Summary Plan Description a "Loss of Benefits" section, Jackson suggests that this section was required to include all circumstances under which one may lose her benefits under the Plan itself. For example, the policy states that one will not recover her LTD benefits if her disability results from one's intentional self-inflicted injuries, or active participation in a riot, etc., including--as pertains to this case--a pre-existing condition. The Summary Plan Description, therefore, in the section entitled "Loss of Benefits," fails to list these other circumstances upon which one will be denied long-term disability benefits. Jackson argues that this omission at least creates an ambiguity with respect to the grounds upon which

13

one may lose her benefits and hence, the ambiguity must be construed against the drafter and in favor of the plan participant.

Jackson's arguments are well taken. This case is somewhat similar to Rhorer in which the Fifth Circuit even found incongruities within various sections of the summary plan description itself. The dispute centered on whether there was an active work requirement imposed on the employee to obtain optional life insurance. The court found that some individual sections of the summary plan description, which described certain benefits, also expressly contained an active work requirement, while other sections describing other benefits did not. From this the court concluded that omission of the active work requirement in the section that addressed optional life insurance coverage was conspicuous. Thus, notwithstanding the fact that the introductory "General Information" section that prefaced the entire summary did contain an active work requirement, the absence of that requirement in the individual section dealing with optional life insurance coverage created an ambiguity, which the court found under Hansen required resolution in favor of the employee. 181 F.3d at 642. In other words, the "correct legal interpretation" of a plan requires that any conflict or ambiguity contained in the Summary Plan Description must be construed in favor of the plan participant, notwithstanding the contrary language that may be found in the policy itself. In this case it is "conspicuous" that a pre-

existing condition, which is a basis to deny an employee her LTD benefits, should be omitted from disclosure in the "Loss of Benefits" section of the Summary Plan Description.

The underpinnings for Hansen and Rhorer, of course, are found in ERISA itself, 29 U.S.C. § 1022, which requires a summary plan description of any employee benefit plan to be furnished to participants and beneficiaries, which summary is required to contain certain specified information. Among the items required to be included in the summary plan description are the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). The "Loss of Benefits" section in Prudential's Summary Plan Description plainly fails to mention the circumstance for ineligibility that Defendant relied upon in denying LTD benefits to Jackson, namely, her pre-existing condition. In doing so, Prudential relied upon the Plan policy rather than the Summary Plan Description that omitted that circumstance of ineligibility. The Summary Plan Description's inclusion of some circumstances that may cause one to be denied or to lose benefits and its omission of other such circumstances at least creates an ambiguity, which must be construed against Prudential. Accordingly, as in Rhorer, the correct legal interpretation of the Plan requires that the ambiguity be resolved in Jackson's favor, which is to say that Prudential's interpretation

15

of the plan--in light of what is contained in the Summary Plan Description--is incorrect.

Prudential states that the Summary Plan Description is merely "silent" with respect to the full set of circumstances that might result in Plaintiff's ineligibility or loss of benefits and, relying upon Wise v. El Paso Natural Gas Co., 986 F.2d 929, 938 (5th Cir. 1993), argues that mere silence cannot be relied upon to contradict the express exclusion of the policy. Prudential emphasizes Wise's statement, "While clear and unambiguous *statements* in the summary plan description are binding, the same is not true of silence." Wise, 986 F.2d at 938 (emphasis in original). Wise, however, dealt with a plan participant's claim that the employer had promised lifetime continuation of employer-paid medical benefits because the summary plan description did not disclose the employer's reservation of its right to amend or terminate the plan's benefit provisions, but simply advised readers to consult the plan's official text for complete information. The Fifth Circuit observed that because an employee's interest in the health benefits plan was not statutorily vested, the employer had no continuing obligation to provide these benefits under ERISA. The employer had the right to amend or terminate the coverage at any time and § 1022(b) does not require the employer to recite that fact in a summary plan description. The court pointed out that § 1022(b) "relates to an individual employee's eligibility under

16

then existing, current terms of the plan, and not to the possibility that those terms might later be changed, as ERISA undeniably permits." Wise, 986 F.2d at 935. Wise involved a plaintiff's claim for what the court called "extra-ERISA commitments," which must be found in the plan documents and must be stated in clear and express language. It was in this context that the court held that silence on the subject of these extra-ERISA commitments could not be implied from silence.[2] Wise did not involve § 1022(b). As pertains to this case, however, § 1022(b) expressly requires that the Summary Plan Description include the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits" of the existing, current plan in place, and in which Plaintiff is enrolled. Had Prudential wholly failed to include a section on "Loss of Benefits," Defendant's argument on silence might be more plausible. But the fact is that it did include a section on "Loss of Benefits," and then failed to include the circumstances that § 1022(b) requires to be included.

---

[2] Interestingly, in its "Loss of Benefits" section, Prudential recites that the employer "reserves the right to change or terminate the plan," thereby obviating any claim for extra-ERISA commitments such as those claimed in Wise, but fails to include the specific circumstances "which may result in disqualification, ineligibility, or denial or loss of benefits," which pertained to the actual plan and which information is required to be included in the Summary Plan Description. 29 U.S.C. § 1022(b).

Given this determination that Prudential's interpretation was not legally correct, the second question still remains, namely, whether the administrator's interpretation constitutes an abuse of discretion. At least a couple of factors must be considered at this juncture: (1) any relevant regulations formulated by the appropriate administrative agency; and (2) the factual background of the determination and any inferences of bad faith. <u>Rhorer</u>, 181 F.3d at 643. After having carefully reviewed the administrative record, the Summary Plan Description, and the Plan, the Court finds that a genuine issue of material fact remains to be tried on whether Prudential abused its discretion. Accordingly, it is

ORDERED that Sterling Bancshares, Inc., AD&D and Disability Plan's Motion for Summary Judgment (Document No. 11) and Plaintiff Marla Jackson's [Cross] Motion for Summary Judgment (Document No. 14) are both DENIED.

The Clerk shall notify all parties and provide them with a signed copy of this Order.

SIGNED at Houston, Texas, on this 22<u>d</u> day of June, 2004.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE